## PARTRIDGE *v.* BOON.

Opinion delivered November 10, 1930.

*R. J. Williams* and *S. S. Hargraves,* for appellant.
*C. W. Norton* and *Daggett & Daggett,* for appellee.

SMITH, J. On February 10, 1928, Mrs. Fannie R. Partridge filed her fifth and final settlement as guardian of her daughter, Sadie Partridge. After including numerous charges and credits the settlement showed the "Present amount now due by guardian to her ward, value of estate, as per this report, $12,542.74." Included in the

assets was a note, secured by a first mortgage on land, in the sum of $5,099.38, and, after taking credit therefor, a net balance of $7,443.36 was shown to be due the ward.

Attached to the settlement, as a part of it, was the following writing: "I, Sadie Partridge, former ward of my mother, Mrs. Fannie R. Partridge, have this day received of Mrs. Partridge one note, of the value of $5,099.38, which is secured by first mortgage on the Kendrick lands, or a part thereof, signed by Mrs. Louise Pope, which I accept and credit my guardian with said amount as shown in her report. I have also checked over all items listed in her report. I find them correct, and I join in and with her in asking the approval of said report by this court. (Signed) Sadie Partridge."

This settlement was filed in the office of the clerk of the probate court on February 10, 1928, and on March 26, 1928, the judge of the probate court indorsed upon it the following notation: "Passed for publication." Publication of notice of the filing of the settlement was duly made, and on April 23, 1928, the judge indorsed thereon the notation: "Examined and approved April 23, 1928. (Signed) Homer Folbre, Judge."

Without further order or action by the probate court, the clerk thereof entered an order containing the recital that the guardian had filed final settlement account "showing all funds accounted for, * * * and at the same time is filed the final receipt of the minor, Sadie Partridge, showing all funds as having been turned over to her by her guardian, and same is hereby approved and the guardian is discharged from further liability."

It is obvious that this order was a misprision on the part of the clerk, resulting from a very superficial reading of the guardian's settlement, as the settlement did not disclose that a final receipt had been filed showing that all funds had been turned over to the ward, but recited only the ward's receipt for the note, and expressly recited that there was a balance due the ward of $7,443.36.

The term of the court at which this order was entered expired, and on February 11, 1929, when the term

of office of the judge who had made the order had also expired, a *nunc pro tunc* order was entered by his successor in the office of probate judge. This order reads as follows:

"On this the 11th day of February, 1929, this matter coming on to be heard upon the petition of Sadie Partridge, a minor, and it appearing to the court that a judgment on the final report was entered by the clerk, and the said judgment was in error as the said judgment states that the final receipt of the minor, Sadie Partridge, all funds as having been turned over to her by the guardian, the fact being and the fifth and final report showing that the ward accepted the note of Mrs. Louise Pope in the amount of $4,099.38, leaving due and owing her by the guardian the sum of $7,443.36.

"It is ordered that this judgment be entered superseding and setting aside the judgment entered by the clerk, and it is further ordered that there was due and owing to the minor from the guardian as of February 9, 1928, the sum of $7,443.36.

"Now this order is entered *nunc pro tunc,* or now for then."

On October 26, 1929, R. M. Boon, who was a surety on the bond of the guardian, filed a petition for a writ of certiorari, in which it was prayed that the *nunc pro tunc* order be canceled, and upon hearing the petition the circuit court granted the relief prayed and that order was quashed, and this appeal is from that judgment.

The action of the circuit court quashing the *nunc pro tunc* order is defended upon the grounds that it was made without notice to petitioner, the surety on the bond; that the judgment of the court of April 23, 1928, became final on the lapse of the term and could not thereafter be modified or vacated; and that the *nunc pro tunc* order did not speak the truth as to what was actually done by the court on April 23, 1928, but substituted a judgment entirely different from that actually rendered.

We do not think any of these contentions can be sustained. No notice was given the surety that the *nunc*

*pro tunc* order would be applied for; but none was required. Notice was given to the guardian and her attorney, and they appear to have conceded the error which the *nunc pro tunc* order cured. This was but a step in the settlement of this guardianship, of which notice to the surety was not required. 28 C. J., chapter Guardian and Ward, § 498, page 1294; *Beakley* v. *Cunningham,* 112 Ark. 71, 165 S. W. 259; *Jones* v. *Graham,* 36 Ark. 383; *Crowley* v. *Mellon,* 52 Ark. 1, 11 S. W. 876.

The *nunc pro tunc* order was made within a year of the date of the order which it corrected and at a time when an appeal therefrom might have been prosecuted, and had that been necessary, and no notice to the surety of the appeal would have been required. Section 2258, C. & M. Digest.

It is true the term of court at which the original order was entered had expired when the *nunc pro tunc* order was made, but § 6290, C. & M. Digest confers upon the court in which a final order has been made power, after the expiration of the term, to vacate such order for misprision of the clerk—this being among the causes there named for the exercise of this power.

The case of *Butt* v. *Saxon,* 181 Ark. 81, 25 S. W. (2d) 8, is in point. In that case a sale of land had been made to Saxon, which was erroneously reported to have been made to Dickinson, and the clerk of the chancery court wrote up an order to that effect, which order was corrected at a subsequent term of the court to reflect that Saxon, and not Dickinson, was the purchaser, and it was held that § 6290, C. & M. Digest, conferred that power upon the court.

It is true, as many cases have held, that *nunc pro tunc* orders cannot be used to correct errors appearing in previous orders, and that their only purpose is to correctly reflect and record the action which was taken by the court, and not to make it recite what it did not recite but ought to have recited. This rule, so well established that no citation of authority is required, did not prevent

the making of the order which was quashed upon certiorari. The original order of the probate court was to approve the settlement as filed, but the entry in the records of the probate court as made by the clerk thereof did not correctly reflect that order. The order entered found no authority in the judgment rendered, which merely approved the settlement as filed. The order of the court did not purport to find that the settlement recited that the guardian had complied with § 5069, C. & M. Digest, by exhibiting the receipt of the ward for all the property. On the contrary, the settlement which the court approved expressly recited that a portion only of the assets had been paid over and that a balance remained unpaid. It was therefore a misprision on the part off the clerk to enter an order which could have been written only by one ignorant of the recitals which the settlement contained and which the court had approved. No authority whatever existed for the order which the clerk entered, as it did not conform to the order which the court made. It was therefore proper to correct his erroneous order by an order entered *nunc pro tunc,* and no notice thereof to the surety on the guardian's bond was required. He became a party to such orders as the court might make in settling the guardian's accounts when he signed the bond, as surety, required by the statute to enable the guardian to enter upon the discharge of her duties as such. It has never been deemed necessary, in acting upon the settlements of guardians, to require the presence of the sureties upon the guardian's bond, by service of notice upon them that such settlements are about to be acted upon. *Planters' Mutual Ins. Ass'n* v. *Harris,* 96 Ark. 229, 131 S. W. 949.

The testimony of Judge Folbre and that of the deputy clerk who actually entered of record the original order was heard by the court below, and has been carefully examined by us, and, without setting out this testimony, we announce our conclusion to be that nothing appears in this testimony to indicate that Judge Folbre made any order except that hereinabove quoted—that of

approving the settlement as filed. This order of Judge Folbre's is not susceptible of the construction which the order, as entered of record by the clerk, placed upon it, and the order as entered should therefore be corrected to conform to the order made, and this the *nunc pro tunc* order did.

The judgment of the court below, quashing the *nunc pro tunc* order, will therefore be reversed, and the petition for certiorari will be dismissed, and this judgment will be certified back to the probate court.